Case No. 24 of 71 v. Goce Gligorov v. Nation of Brunei. Mr. McGillicuddy, is there a word for the evidence? Yes, Your Honor. May it please the Court. In the Fold case, the Supreme Court made it eminently clear that the test for personal jurisdiction under the Due Process Clause of the Fifth Amendment does not include the Fourteenth Amendment's minimal contacts requirements, but rather only requires a flexible reasonableness requirement. The Supreme Court didn't even say that. It said, we're not deciding whether there's a reasonableness requirement, but it would be reasonable in this case. So, do we know if there's even a reasonableness requirement? I stand corrected. That is what the Court said. However, the reasonableness requirement of only fair notice and opportunity to be heard, we believe, is the applicable standard that we get from Fold. At its extreme, if there's no territorial limitation, there may not be a reasonable requirement. But if there is a reasonableness requirement, it is certainly met in this case. And the Post-Fold cases make it clear that any narrow restrictions of a personal jurisdiction analysis under the Fifth Amendment, that there should be no restriction other than a possible requirement of reasonableness. The most important open question after Fold is whether the Fifth Amendment test is reasonableness or nothing. And you have a concurrence from the Supreme Court saying nothing. We have academic scholarship saying nothing. We have an express reservation from the Supreme Court on that question. We asked you for help, and, you know, the nothing position wins the case for you, and you haven't even asked for it. So how do we deal with this now? Well, taking the position that nothing is required, we certainly meet the test here. We have some Post-Fold guidance. Maybe that's the right answer, but it's a big step, and you haven't really helped us get there. Mr. McCallion, assuming that the reasonableness analysis applies, it has the interests of the plaintiff, the sovereign's interest in adjudicating the claim, and the burdens on the defendant, what is the United States' interest in adjudicating this claim? Where do we look to find that out, and what is it? There's a strong public interest consideration here that would favor the court's exercise of jurisdiction in that there's a strong national security interest in preventing U.S. facilities and infrastructure for being used in furtherance of terrorism and other unlawful activities. It's a little more attenuated than that, isn't it? It's not that they're meeting to advance terrorism, but that they're meeting in your allegations to sort of plot to retaliate against or silence your client for his allegations that they were participating in financing terrorism. Certainly, that's part of it, but what they were attempting to keep surreptitious were their activities in using both the rooms at the hotels in California as well as banking facilities of the defendants in furtherance of money laundering and financing of terrorism. So, their meetings to suppress my client's dissemination of information relating to that and to undercut his credibility were also meetings among the actors who were engaging in the terrorist financing. And we believe that the U.S. would have a strong interest in that. Do you need the terrorism? Put aside the terrorism, because as to these three corporate defendants, you're not seeking any remedy or damages for terrorism. It's just for reputational harm. So, what is the U.S. interest if we put the terrorism to the side? I understand your argument, but I'm just asking you this to think about it this way. What is your argument if we put that to the side? Well, if we put that to the side, his damages were to his reputation. However, the goal of his speaking out and disseminating information about the illegal activities, certainly the U.S. would have a strong interest in preventing the suppression of any person such as my client, the plaintiff, to disseminate information that would be helpful to U.S. law enforcement. So, you don't have an argument apart from, you keep trying to circle back to this terrorism thing. There's no allegation of the complaint. Your client's allegations about terrorism connections with certain Brennan officials, it's allegations, obviously, were part of a study he contracted to provide them. There's no allegation that your client wished to inform the U.S. government and law enforcement or Brennan law enforcement or Slovenian law enforcement or anybody about this terrorism. Those allegations are not in your complaint. So, I'm asking you one more time, without reference to terrorism, then you have some tort claims, contract and tort claims. What is the U.S. interest in that, in those? Well, as in the Fairfield Sentry case, which was an offshoot of the Bernie Madoff post-fold, the court rejected defendants' attempt to limit-fold where there was use of the U.S. banking channels and facilities for foreign actors engaging in unlawful activity. In that case, it was not a terrorism case. It was merely the use of money laundering. And this was the information which my client brought to the attention of the Brunei government after his investigation. And the use of facilities, whether for banking facilities, which it's alleged that the defendants here used, whether it be for terrorist or non-terrorist purposes, is immaterial. But the use of those U.S. facilities for unlawful money laundering purposes, certainly the U.S. government would have a strong interest in preventing the use of infrastructure and facilities in furtherance of civil RICO activity related to terrorism or not related to terrorism. When you say facilities, you mean the hotels, the hotel in California? The hotels. The U.S. has an interest because that hotel was used as part of these torts? Certainly, they're availing themselves of U.S. facilities, the hotels, to engage in illegal activities. But also, as in the Weinstock case in Illinois, Postville, there was the use of U.S. banking channels and also trading facilities for illegal purposes. And the U.S. would have a strong interest in preventing the use of banking and other facilities such as. Where do you allege? This is, as Judge Millett suggested, this is a defamation claim. So, suppose the allegations were just two foreign defendants in the United Kingdom conspire to defame a plaintiff in France. And it happens that they do that. They meet in the California hotel and conspire to do that. Does the U.S. have an interest in adjudicating that tort because the meeting happened in the California hotel? Well, that certainly would be. I would say yes. However, in our particular case, the meetings in California hotels and the use of U.S. banking facilities was designed not for garden variety defamation, but to prevent a whistleblower to the Brunei government from informing the government of money laundering activities, which implicated the use of U.S. banking facilities. Just explain that to me. He gave his report to Brunei officials, right? Correct. So, he informed the Brunei government. Yes. He's done the very, I don't know if it's whistleblowing when you're contracted to collect information, but he provided the information to them. They have it. They decide to do with it what they will. No one stopped him giving information to the Brunei government. No, the allegations of defamation and the contacting of Interpol to interfere with his business, including being stopped at JFK Airport and ruining his relationship with his one major U.S. client, a cruise company, followed that particular disclosure. And the suppression of that information, the defamation, was designed to prevent the information which he provided the Brunei government from being acted on by the Brunei government, but also with other related law enforcement, Interpol and others. So, they went to Interpol in order to turn Interpol against him instead of him and the Brunei government being able to use Interpol and its international law enforcement connections to prevent the illegal use of international banking facilities. Mr. McCallion, one of the reasonableness factors, another one of them is the plaintiff's forum access. And one strike against your client is that he's not American, but that doesn't preclude the U.S. interest in providing a forum. Where else might your client pursue these claims if the U.S. court were unavailable? It seems like where the defendants are at home, presumably. Where are the potential fora that he could bring the claim, even if it's not his preferred claim? We don't believe he has any other forum to pursue this at this point. He has substantial contacts with the U.S. through his business and American clients and traveled extensively in the U.S. and was indeed stopped at JFK Airport based on a blue notice, which the defendants had induced the Interpol to issue, which would stop him at any international borders. So it adversely impacted his business internationally, but certainly adversely impacted his business in the U.S. Why not the U.K.? These businesses based in the U.K.? We are not aware of any remedy in the U.K., and it's not in the record, but he actually did inform U.K. authorities relating to it, but was not able to get any particular recourse. Did you or your client inform U.S. authorities, for example, whether they have an interest after fault in how the personal jurisdiction analysis in this case is framed to provide, to ensure that under Rule 4K2, persons in a situation similar to your client would have a U.S. forum? I mean, it would be helpful when we're trying to decide the U.S. interest. It might be helpful to hear what the U.S. government perceives to be the U.S. interest, but you haven't had any communication with them or invited them to file an amicus brief? We have not, Your Honor. You talked about the use of, your complaint says at least once a hotel was used in the U.S., the Beverly Hills Hotel, for a meeting in what the complaint calls a safe room. What do you mean by safe room? A safe room, like a safe house, would be a place where interested parties would conduct business. They would, the room would be monitored to make sure that there's no surveillance equipment in it and that meetings could be held without surveillance or recording devices present. So that would be a hotel room that allows for confidential meetings? That's correct. I'm sorry. No, please go ahead. The affidavit submitted, declaration submitted by an investigator, identified specific dates, numerous specific dates. I want to stay focused on the rooms here because that declaration doesn't mention anything about safe rooms. So I really want to understand this information belief allegation. So your allegation is that this hotel had at least one room where information could be, where meetings could be held confidentially. And that that room was, these clients were allowed, these hotel clients were allowed to use that room. I just want to make sure that's what you mean by safe room. Yes, and were used on numerous occasions. Yeah, okay. Is your argument that the safe room was made specially for them or that the hotel, like a lot of high-end hotels that might host foreign governments or diplomats or even celebrities, have meeting rooms that are soundproofed? Yeah, in this case, it would mean that other than soundproofs, it would be, it would be tested and searched for any surveillance equipment, recording equipment before, before any particular meeting. By the people attending it there or by the hotel? By the hotel security and possibly some of the attendees as well, their security. Okay. And you, I think this is an information and belief. So what information do you have to make this allegation that there was such a room in this hotel? It's the declaration of Mr. Danette. He doesn't mention anything about safe rooms that I saw. Maybe I'm wrong. Maybe I'm wrong. I just read it and I didn't see it either. So he doesn't talk about that. So I'm trying to understand what information you have. This is anything other than a confidential conference room. Well, he identifies specific dates of meetings. He's speaking specifically about the allegation that the hotel provided what you call in scare quotes, safe room, a safe room for meeting. And what you meant by that, if you just meant a confidential meeting room, That would be sensible that hotels, at least higher end hotels with the clientele that would need such things on occasion would offer such a room. But you're giving me this information about then the hotel comes in and they sweep it and I'm just trying to get where, where, what your basis for that. Is because that's not in your allegation. There's no clarification. What you mean is to say firms that were provided. The information comes solely from Mr. based on his investigation. So, that's not in his declaration. So you're just telling me, I thought that allegation was in your complaint before you had the declaration. So. Yes, that information came from Mr. that we include, but it's not in the declaration stuff about safe rooms and how they work. So, that's just no facts before the court. So, I'm trying to understand how we're supposed to think about your complaint seems to suggest. The fact that a safe room and scare quotes was provided is a relevant. Fact is to sort of the complicity of the Dorchester group. But just putting 2 words and scare quotes and a complaint doesn't really carry that load and there's no factual allegations. Saying that this is anything other than either a confidential room or. A safe room from perhaps earthquakes or something in California, or, you know, the bomb scare room or whatever it is, but there's nothing. That we can rely on about what you just described about how you think this room operates in the complaint or the declaration. That I'm aware of, but if there's something else, let me know. Well, the information was alleged and the complaint verified complaint. On a good faith belief, all you alleged is the existence of something called a safe from you didn't define safe from you didn't tell the complaint doesn't say what's meant by that. Right well, there's lots of different meanings. There's lots of different meanings for safe room. Okay, well, I'm, I'm describing to you and good faith what. Mr. done that conveyed to us. And we perhaps did not go into. A level of detail that the court would want, but that's exactly what he was. Describing to us and the reason why we, we included it. In the complaint, let me try it. Let me just try it this way. We have 2 nuggets. 1 is. Which tells us there were meetings at this hotel and who was there. And number 2 is the complaint, which says the hotel has. I'll just say confidential facilities. What is what is the allegation or even information or and belief. That supports a plausible inference that Dorchester is in on this grand conspiracy. As opposed to Dorchester is just renting out hotel rooms and meeting facilities. Well, as alleged in the complaint in good faith, the Dorchester. Had these facilities and also. Not only made these rooms available, but used its banking facilities. To facilitate the money laundering that's. Perhaps even more significant than. Then the use of confidential or, or, or state safe rooms. That it's alleged. Based on. Information and belief, but reliable information and belief from a. Highly experienced counterintelligence intelligence officer. That that the banking facility based upon the information provided to him. That he that the banking facilities of the Dorchester were being used. For money laundering purposes, in addition to the use of its rooms and infrastructure. Can I ask you 1 other thing to you also alleged there's 1 other nugget and that is. That representative of. Each of the corporate defendants, including the Dorchester. Group attended the meeting. What do you mean by representatives? And what information do you have? Do you have any further factual information that is not included in the complaint? Now, the information comes from Mr. done that. And he doesn't declaration doesn't even mention a single corporate defendant attending 1 of these meetings. So. He doesn't say anything about the corporate defendants. He talks about other people attending the meetings. So, when you use the phrase representative in the complaint. Please define representative for me as used in the complaint. Yes, we're, we're advised on information and belief that it was a representative Dorchester. A financial a person familiar with the use of the financial facilities of. Of Dorchester would be the appropriate 1 to be at the at the meeting as well as representatives. Of the other corporate defendants. Okay. Just be clear. You said a. Finance person familiar with finances. Yes, in particular. Dorchester's financial facilities. Their banking facilities. Okay. So someone from Dorchester. Who's familiar with their finance financial facilities. Yeah, that's what you mean by representative. Correct. Is that what you meant for representative as to the other 2 hotels as well? Yes. Okay. Any other questions? Thank you. Thank you very much for. Coming back again, Mr. McAllen, and we'll give you, we will give you a couple minutes. Thank you. Mr. worth. Thank you for coming back again to. Absolutely morning honors please the court. Stephen worth on behalf of the corporate defendants. I think there are 3 principles that should guide the court's analysis this morning. The 1st is that full doesn't decide this appeal, but I do think it does provide significant guidance. Full held the Congress has power under the 5th amendment to enact targeted jurisdictional statutes, like the, which expand jurisdiction. Of the federal courts in a manner that is appropriately tailored to protect strong federal interests. The 2nd point is that Congress has not enacted a jurisdictional statute, like the here. The only potential basis for personal jurisdiction is rule for K2. But the rule doesn't extend to the outer reaches of constitutionally permissible jurisdiction. It requires it says as allowed under the laws and the Constitution. It's very tax seems to go as far as the Constitution. Let's it go. I understand that. I understand that the text does refer to the US Constitution. However, rule for K2 was promulgated in a specific time on a specific constitutional backdrop to address a very specific gap in the rules. The 5th amendment means something different when it was promulgated. Absolutely it did. And in fact, the rules committee amendments, I'm sorry, that's something different when that was promulgated, or maybe people misunderstood at the time. The rule was promulgated. The rules committee understood the Constitution to mean something very different. And we know that they understood it to mean something very different because they cited the cases that said that it meant something very different. But they didn't codify that understanding. They didn't refer to minimum contacts, fair play, and substantial justice. Instead, they just said consistent with the Constitution. So typically, we would read that as sort of a dynamic incorporation as whatever the 5th amendment requires. However, the courts and relevant actors understand, understanding of the 5th amendment evolves, and that would be the applicable understanding. I think that the rule committee's advisory notes say basically the opposite of that in the way that they approach the issue. They said very specifically they incorporated a minimum contacts analysis. They cited two cases at the time that applied an aggregated U.S. nexus approach to minimum contacts. How can we retain that against the Supreme Court's unanimous statement in fault that we have made clear that the due process clause of the 5th amendment does not incorporate the 14th amendment minimum contacts standard? So one thing that's clear under fault is the minimum contacts analysis is inapposite when we're looking at the 5th amendment. Now, there may be other analyses that do some of that same work, but I can't understand how you would revert to that for 4K2 when the analysis in fault is not limited to the situation in which there's a specific statute extending personal jurisdiction. It appears to be a general understanding of the 5th amendment as it applies to personal jurisdiction. I think one way to think about it is to paraphrase Justice Frankfurter, even though the rule's been transplanted into a new constitutional regime, it still takes the old soil with it. And I think that the rule advisory committee's specific statement that it was addressing a small gap in the rule makes clear exactly what they were trying to do. There's no indication that they intended this modest patch to create a new and vastly different personal jurisdiction regime out of whole cloth. I think the Supreme Court's been clear, even in recent cases, Chief Justice Roberts has stated that the advisory committee notes are a reliable source of the meaning of the text of the rules. And I think here it has to take into account the constitutional backdrop on which it was promulgated. No one understood the rules committee to be engaged in this complete rewriting of personal jurisdiction in the United States. I know you take issue with it, but how is the concurrence and fault off base in concluding that there are no constitutional limits on the federal court's personal jurisdiction over foreign defendants or defendants that don't fall into 4K1? Well, I think critically, the concurrence is only two justices and the court's analysis, the majority's analysis would be entirely unnecessary if the concurrence were the law. What is wrong about the majority doesn't reach it, but where are the limits? Where are you finding the source of the limits? If the if the court unanimously has said that the 5th Amendment does not encompass the parallel limits of the 14th, how do we I mean, it's a tough case. And the Supreme Court left all of us with having sort of cleared the board and not really provided signposts for a case like this, but only for a case where there's a statute authorizing personal jurisdiction. But as I take it, the rule 4K2 is the long arm applicable here, and it very broadly under the terms of fault, it very broadly authorizes federal courts, United States federal courts to exercise jurisdiction. And so the question is, I take your brief to be saying, well, we're going to assume that minimum context and reasonableness apply. And I just am not seeing where you get that. So, I guess the 1st premise that I'd start with is that, in fact, full didn't clear the board that, in fact, it was narrowly tailored to a specific context and it didn't entirely upset the apple cart. And I don't think that the Supreme Court intended fold to be a complete reset. Where are you saying that if we don't have a special statute, we just keep doing minimum contacts under the 5th Amendment? Yes, I think the Supreme Court pretty much said minimum contacts is just not the 5th Amendment analysis. So, let me add some subtlety to that. I think that where there has not been a specific statute that has been enacted, the baseline needs to be some meaningful U.S. nexus. It doesn't have to be the exact. That's your interpretation of a new post-fold test. But I think we have to take as given the Supreme Court has said, all you folks who thought minimum contacts applied under the 5th Amendment, you're wrong. No minimum contacts test. Right. So, I'm not telling you what the new test is, but it's not that. And whatever that test may be, this one meets it. If there's any test at all, this one will meet it because it seems like they're saying at most it would be reasonableness. I understand, Judge Millett. I think probably the easiest way to approach this is to consider whether there has been a grant of personal jurisdiction by statute or rule. And we'd look to Rule 4K2, and that's where I think our reading of 4K2 on the constitutional backdrop on which it was promulgated is important. And I think that's where you can very narrowly say that minimum contacts persist until Congress says that it shouldn't anymore. And I think that's a good answer. Just under 4K2? Under Rule 4K2, exactly. But I know you referenced the Value Advisory Committee notes, but have they ever been – have they ever said that they carry weight when there's ambiguity in considering something? But I'm not sure what's ambiguous about, you know, to the limit of the laws and the Constitution. I think actually the Supreme Court has gone a little bit further than saying that it's only in instances of ambiguity, I think. Can it contradict the text? Can we use it to say the text doesn't mean what it says? I would not say that that's what we are proposing at all. I think because it's exercising jurisdiction, it's consistent with the United States Constitution and laws. You don't argue it's inconsistent with any law. And so the only question is would exercising jurisdiction be consistent with the U.S. Constitution? And what I hear you saying is based on Advisory Committee notes, we should read that as exercising jurisdiction is consistent with how lots of courts thought the United States Constitution read. And how the Rules Advisory Committee understood it to apply when they were promulgating a narrow rule. It's an odd interpretation of U.S. Constitution. Normally you would understand that to mean whatever the U.S. Constitution actually means. You're putting a gloss on it. U.S. Constitution as understood at the time. Well, I think I understand your hesitancy, but I do. You have the Advisory Committee notes, and I don't think you cited this, but you also have charming Betsy to prevent a wildly extravagant assertion of jurisdiction on the assumption that there's no Fifth Amendment limit. But it's still a very tough textual position. Well, let me see if this might persuade you. I think this is critical. If Rule 4K2 did truly extend to the outer limits of the U.S. Constitution, then Congress never would have needed to pass the PSJVTA. The court's entire analysis in full would be unnecessary. The plaintiffs in full would have simply been able to hail any foreign defendant, not only the PLO and the PA into court, but anyone who harmed them on the basis of Rule 4K2. Of course, that was never contemplated. Congress certainly never contemplated that. The Supreme Court never contemplated that. I just don't think that anyone from the Rules Committee until now has ever considered Rule 4K2 to mean universal worldwide personal jurisdiction. And I think that's true because Rule 4K2 doesn't serve any specific federal interest. It's not tailored to any federal interest. And so to the extent that the court considers the U.S. interest to be relevant in this analysis at all, and I think that Fuld recommends that the court do that. I don't think it recommends anything. I think it says, here's what we're looking at in this case, and we're content. I mean, they just expressed that we're not saying what the test is. And so we have to accept that. You do have to accept that. I do think, though, that the court's analysis is meaningful. They did it because I think — Because they were avoiding a question that they didn't need to confront in that case. It does not mean, imply anything about the answer to that question, does it? Well, they were presented with the opportunity to reach that broader holding and declined to do so. It's not necessary to that case. It's just that, I mean, pot versus spend for farm. If you can decide a narrower constitutional rather than a broader constitutional issue, you do the narrower. And that principle also could apply here to your interpretation of Rule 4K2, of course. What do you mean? You could take a narrower view of the rule in order to avoid the thorn in your constitutional questions. So assume that we don't apply minimum contacts, that we don't — we're unpersuaded. And I'm not saying I am. I'm just saying for purposes of understanding your position and its alternatives. Assume that we are unpersuaded, that minimum contacts is part of the soil, that continues forward in Rule 4K2. What about reasonableness? The Supreme Court in fold was pretty clear. Fifth Amendment does not carry minimum contacts. But open about reasonableness. Now, that was in the situation where they could assume it applied because it was met. If we're going to use reasonableness here as an obstacle to the plaintiff, we have to have firmer ground than that to continue to apply it. What's your best argument that we can continue, at least in this case, to apply the Fifth Amendment as requiring the sort of reasonableness, the fair play and substantial justice factors that are not federalism-related? The plaintiff hasn't seriously contested that the reasonable standard does apply. And I think in his brief, he specifically said it does apply. But putting that aside, I think there is a good reason to continue doing it here. And that's, one, that the Supreme Court certainly did not displace the reasonableness analysis. And, two, precedent. Precedent. Viewing precedent here, I think, is a good idea for many, many reasons, including that the test has been applied consistently by courts for decades, that it promotes fairness and substantial justice vis-a-vis defendants' interests. It ensures fair notice. It protects reliance interests. It stops forum shopping. All the reasons, I think, that supported a reasonableness analysis under SAGI would apply in the Fifth Amendment analysis context as well. For reasonableness purposes, the allegations of the complaint read in the light most favorable to the plaintiff are that there's a conspiracy against him. And, as you know, one of the core elements of a conspiracy is agreement. And he's argued that the agreement was hammered out, at least in part, at the Dorchester-owned hotel in Los Angeles. It's, you know, it goes back before international shoe under Pennoyer, which really rests on basic kind of international law ideas of sovereignty. U.S. sovereignty unquestionably encompasses property and activities that occur within U.S. territory. Why is that not enough, at least to support Fifth Amendment personal jurisdiction over Dorchester? So, with regard to Dorchester, I think we could start with the ownership of the hotel itself. I don't think that there's any suggestion from plaintiff that mere ownership of the hotel and its use by the conspirators would be sufficient. It would require, I think, sufficiently specific factual allegations to show knowledge and intent. My knowledge, knowledge is part of, it could be, you know, part of Dorchester's involvement on the merits. But when we're talking about personal jurisdiction, the merits scienter is not, is never part of the connection that we look at. I mean, if someone, I mean, Dorchester was aware that it was within the United States. And apparently, you know, in order for it to have any liability, I believe that the allegation is that a managerial level member of the Dorchester company was at the meeting. So maybe knowledge is even pleaded insofar as it's relevant. But I'm not sure that knowledge has ever been an aspect of, I mean, beyond knowledge that you are in fact in the territorial United States. Well, I think if you look back to even like Schiff v. Heitner, the Supreme Court was clear that this sort of like quasi and rem jurisdiction isn't sufficient. You need to show that the claims relate to the property. That goes to the relating to or arising from aspect, which is not, again, that's not a knowledge. That's not a state of mind element. That's the nexus, the relationship between the parties and the forum and the claim that there's that sort of. But I take that to be part of the minimum context analysis that the Supreme Court has set aside. I think it could also be incorporated into us into a reasonableness analysis vis-a-vis the defendant's liberty interests, which is a part of the reasonableness analysis. I also do think that there would be something. Why is it if Dorchester has a has a business and presumably lawyers dealing with its legal problems that are barred in in the United States? What is the what is the burden on the defendant? That's so outside of the norm for purposes of case like this? Well, I think for. Dorchester putting aside. Whether he plaintiff is sufficiently alleged that. That a meeting took place or that representatives attended that meeting, I think near ownership of hotel. It's simply fundamentally unfair to hold defendants liable for all criminal conduct that could take place at that. Well, that's liability to have to say that the place for this suit. I mean, it may be it may be a baseless suit, but you're asking us to assess the allegations. In a kind of a 12 be 6 way, not a 12 way. I'm sorry. I'm really trying to understand. And you said, and it may be right that some kind of nexus between the parties, the contacts and the claim. Is instinct in the reasonableness concept and fair notice we've applied welfare notice you get, I guess there's notice in terms of service of process, but you may notice as in. Foreseeable that are in forum activities. Could lead to us being held in court for something like this and I guess if, I mean, following up on judgment, let's line up questioning if you're running a hotel and if it turns out, let's say. That you are tolerating prostitution ring being run out of the hotel. I mean, there's no question, but that you could be. That the, the, the location of the forum where the hotel is located, the court there would have. Jurisdiction there may be a question about knowledge, you know, recklessness. Deliberate indifference to what's going on, but that's a merits question. The question about what is nefarious conduct happening in the hotel would seem to me. Hard to say where. In the surviving 5th amendment analysis. I think it does persist in the, in the fair notice that your conduct will will give rise to. Jurisdiction in the forum. Where so, let's say I open a hotel and I want it to be very hip place for young people. And it turns out that it's a huge nuisance that the neighbors are furious because there's music all night and young people coming and going and parking, closing their driveway. So they can't come and go exposing their children to public drug use. And I. And people want to sue me for that. Any question that that would be. That the court in the forum where my hotel is located would be. Appropriate under the 5th amendment, I think in that instance, judge pillar that the. That the claims there are so wound up in the operation of a hotel and the normal operation of a hotel and knowledge of how it's being used that, in fact, it is reasonable in that circumstance. I think here where you allege a worldwide conspiracy with a meeting or 2 in California, it's just simply not a sufficient connection to give not foreseeable that international businesses. Involved in unlawful doesn't have to be criminal. I mean, this is a civil case involved in conduct that violates the law. Would take place in a conference facility, right? And unreasonable to unreasonable to assert. U. S. court jurisdiction over that sort of a claim, even if a representative Dorchester was in the meeting. That seems like materially different. Situation than the, you know. I didn't know that guy was having there in the room. I agree. I 3 judgment. And I think that does present a much closer question. The allegation here is not only that. You know, bad things are happening in your room. Once, maybe more than once. But that Dorchester was in the room, what happens? Yeah, I think so. I would resist that. I think that that both today's oral argument and at the last oral argument. And he hasn't been allowed jurisdictional discovery. All, but all he said for the basis for his turned out, it was the CEO. Surely, you wouldn't argue lack of jurist. At that point, CEOs and on the meetings. Completely to be clear, I don't have a basis for that either. I'm just throwing this out as a question. We rent out these super secret rooms. And the CEO is in there during the meeting, if they had alleged CEO, rather than representative. Any question if he had a good faith basis, we assume good faith. Let's say the complaints that a representative says the CEO. Was in the room. We don't we don't dismiss complaints because the defendant comes in and says. I don't think I can trust him for what he said, right? We take it as given. All right, so I assume you're not impugning his faith in this regard. So if I said, if it said CEO, I get it. Doesn't it said CEO. What's the answer? I hesitate to concede it on the hypothetical because. I don't know how it fits in conceding anything. It's a hypothetical. You're telling me what your legal your answer is or how to legally analyze that. Because it doesn't say CEO, so you don't worry about conceding. That point, but you do have to tell me how your legal analysis that you've just been discussing with judge pillar to answers that question. I think there would need to be specific facts to make sure to make that that is. To render that a plausible allegation, what would be. Under what rule would they have to say more than. The CEO was in the room. With the other allegations we have here of people in the safe room. For this meeting on how to hurt client X. I think fundamentally the problem here says. That we get squirrely whenever a CEO is referenced and we have to have more facts. What case you're relying on. We do notice pleading in this country. Well, I think at least under Twombly, it needs to move. From possible to plausible. And they're simply not facts. If the CEO had been there, let's just appear yes or no fact question. It's it's not a plausibility thing. It's not that they're doing something fanciful. There are unfortunately CEOs in this world who engage in bad conduct. I don't know what's implausible and again, I'm not speaking anything to Dorchester in particular here, but about an allegation like that. I don't know how that fits into an impossibility analysis under. I don't see it. I think if it's just we don't believe the guy on the other side, so it must be implausible. I think it's more I think it is more than that here, because we do have the facts. This is not a conclusory. As your brief said, a conclusory complaint, particularly if you read it supplemented by the declaration. There's date, there's locations, dates, names, companies, there's particularities. I would say that, though, that it is conclusory with respect to the participation of the hotels. It is conclusory with respect to that's why I'm saying we have this exact same complaint and we put in CEO instead of representative. It's no longer conclusory. I think it means sort of a legal conclusion. It's not factual issue. I do think that here, especially considering the declaration, which doesn't identify, it says, including. I understand that, but it doesn't exclude either. It doesn't contradict the complaint. It doesn't exclude it, but I think if you go to Mr. McCallion statements here, the inference that he's drawing. Is what he said last time was that if the hotels were participating in money laundering activities, that the representatives or people from the corporate corporate organization must have had sufficient authority in order to authorize the use of bank accounts. That's the best information we have. That was at 6 minutes last time. I do think that that is simply an inference that is too attenuated to support personal jurisdiction. Why? I don't know. This is this is definitely to me. I think it is too attenuated because it fails to identify any specific facts that actually tie any representative with actual authority from any of these hotels to any of them with authority over finances. That's so that's not alleged in the complaint, nor is it, nor is it in the. I'll let you I'll let the CEO off the hook. Now, I'll say someone with authority. Over finances, I think it is notable that this that this theory has come out for the 1st time at oral. It's not in the complaint. I don't I take from your. Desire not to answer any of my direct questions. That you recognize that's a pretty tough hill. To climb, it would be a personal jurisdiction dismissal, not 12 be 6, not summary judgment. Yes, it would be a much more difficult case. Okay. And so if we have. A factual allegation about representative, that's ambiguous. And what that actually means, I get that he did not the words said today are not in the complaint. But there is an allegation there that if understood 1 way. Would be sufficient and if another way would not to for your connection and notice concerns. Why isn't that the exact case in which jurisdictional discovery would be appropriate? We need to figure out. It's not that there's nothing in the complaint. There's, there's an allegation there. There's lots of specificity and then there's this description of a representative. And understanding factually what that. Means is representative means an agent that someone can make decisions. That's a normal understanding of representatives and so why isn't. That at a minimum, something that needs jurisdictional discovery. So, I think when you're approaching the jurisdictional discovery question, the 1st. The 1st thing to do is recognize. The deference due to the district court and its analysis. Putting that aside, I think here again, the question is. Good faith basis articulable good faith basis and I do not believe that that. Plaintiff has articulated a good faith basis for his information and belief. I don't think good faith. It's plausible, which is an objective standard. Good. I shy away from embracing any kind of reference to good faith because it, it implies that you look into the mind of the. Affiant and we don't do that. We, we require attestation under penalty of perjury and we look at the objective reasonableness and we also have to be careful that we are not playing the role of a trial court or prejudging. A complaint, which is mere allegations as a factual matter. I agree. I do think that some. Courts have used the words good faith, which is why I chose them, but I understand this 1. I understand the desire just to you to an objective standard. I think objectively, it doesn't meet the standard. 1 of the things that the, at least the concurrence and fold talks about is. The international law and whether whether that's really a place to look to inform. The personal jurisdiction analysis when, you know, as a functional matter under 4 K, 2, we're looking at at defendants that are not at home in the United States and therefore don't fall under 4 K. 1. Have you looked at international law? Is there any guidance you can offer us? From principles of international law, that's at all instructive here. I think the charming Betsy cannon probably is more instructive for this court's analysis. I do think that. Um, to be how you define that cannon, because I'm having trouble connecting it. In the absence of an international law question sensor, so I think that the court should and this is so maybe maybe. Using the term, Charlie charming, Betsy isn't necessary. I think I point the court. Really to the US, the United States is brief and fold where it talks about the potential for diplomatic backlash, retaliation from other countries. I think there's a good reason and the court has pointed this out both in fold and prior to be very careful in the world of personal jurisdiction, not to extend things radically into the international sphere. And so, so I think here's here's the concern and you tried your constitutional avoidance and that kind of stuff. But do you agree that if there is no limit. Let's assume the concurrence were, in fact, the opinion. When. Yes. All right. Then we have to answer that question. We can't. Rule against them without saying there's some limit. I disagree. I think you can say that pool for K2 provides the limit. That's where we, but that's where. Okay. We've had that discussion. All right.  And 1 other question just. Doors Chester doesn't dispute that it has minimum contacts in California. If the argument here was that. You know, Mr. had a hotel room and. You know, walked out in the hall to get his morning coffee and the floor was all wet from having been Washington that the little triangle sign he slipped and fell. So, yeah, the door Chester does have minimum contacts for his hotel operations in California. Absolutely. Because 4K2 requires a term. Pliers that they're not be jurisdiction in any. Stay for K2. I'm sorry. No, sorry. 4K2 is applied by this court at least. Uses something of a burden shifting analysis where if, if no, if the defendants do not assert. A different district where jurisdiction would be possible and can and concede jurisdiction in that district. Then this court proceeds under rule 4K2. So, we are properly under world 4K2, but it just seems very odd. To accept if we all look and know that there's jurisdiction in California. That's just to accept it. Well, I don't believe that we would concede jurisdiction. I want that minimum context test now. I don't believe that we would concede jurisdiction in California. With respect to these claims, how could there be a difference? Between on your view, the. Contacts any, any contact to the US with this California hotel thing is going to be in contact with California. So, if we're doing. If we're doing some sort of reasonableness test. Do you think that there's sufficient connection to the US? Why wouldn't there be? Sufficient connection to California? Oh, I agree. Just if you, if you were to, if you were to determine. Minimum contacts analysis is satisfied with respect to the United States. I don't think there's any daylight between that and the contacts with California. Any other questions. No question. I think I'm good. Thank you. Thank you. Your honor. Thank you very much counsel. Hey, Mr. McElhinney, we'll give you 2 minutes. Thank you with regard to this particular case, which is a civil Rico case. Congress intended that the statute have a nationwide reach. And we think this is significant. And the northern district of Illinois has already decided in 1 stock versus Islamic Republic of Iran. That when civil Rico and rule 4 K2. Is involved, these are relevant. In a post fold analysis. In establishing really a national interest. And the civil Rico statute allows a private litigants. Really to vindicate public interest, which previously were only available to. Uh, the US attorney's office and Department of justice. And criminal Rico cases. So, there's a strong public interest in permitting. Plano such as my own to pursue civil. Rico cases in in the context. Here as alleged and. We believe that under really any absolute standard. Or under a reasonableness standard, there's no burden on the defendants here. Of jurisdiction, but but also. A strong interest on the part of the plaintiff. Who has been damaged in his business extensively. Uh, his US business, you think there's. Jurisdiction they have minimum contact the Dorchester has a minimum contacts with California. Dorchester group because of its operating hotels there. Yes, absolutely extensive minimum. Minimum contacts for all the reasons you've argued about contacts that includes the activities you allege here. Correct both so why didn't you sue in California state court? And we wouldn't have to be here dealing with. We were asked before if there's another place you can sue. It seems the obvious place as to Dorchester. Under your theory of minimum contacts would be. California and you can do Rico claims in state court. I believe you could, but as the civil Rico statute, it's a federal statute and. Uh, the US district courts have. Have accepted and supported given the right allegations. And federal court in LA. I mean, the 1 thing that's just no connection to whatsoever is DC, but I still again, I'm still not quite understanding why if for all the reasons you've argued. You're of the view that there's minimum contacts. You may think more than minimum contacts in California Dorchester group. That the lawsuit wouldn't have been. There and the state court, you just have to deal with minimum contacts. Yeah, well, fortunately, you have another forum. Potential under your theory, you do have another forum, which would be California state court. At a minimum, it never occurred to us to go to California. We've always tried. As most plain as civil Rico cases. In the district courts, and there are allegations of meetings taking place at the embassy. Here in Washington DC, so we believe that it's an appropriate. Appropriate case for a DC, which has the experience. And the familiarity with the application of. 5th and 14th amendment analysis to. Personal jurisdiction and civil Rico cases. Any other questions right? Thank you. Thank you to both counsel. The case is submitted again.
judges: Millett; Millett; Pillard; Pillard; Katsas; Katsas